1  PHILLIP A. TALBERT
   United States Attorney
2  VERONICA M.A. ALEGRÍA
   Assistant United States Attorney
3  501 I Street, Suite 10-100
   Sacramento, CA 95814
4  Telephone: (916) 554-2700
   Facsimile: (916) 554-2900
5
6  DAVID L. JAFFE
   United States Department of Justice
   Chief, Organized Crime and Gang Section
7  DANBEE KIM
   Trial Attorney
8  1301 New York Ave., NW, Suite 700
   Washington, DC 20005
9  Telephone: (202) 878-9352
   Facsimile: (202) 307-3944
10 Attorneys for Plaintiff
   United States of America

11

**FILED**

Oct 20, 2022

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

**SEALED**

12             IN THE UNITED STATES DISTRICT COURT

13                 EASTERN DISTRICT OF CALIFORNIA

14

15 UNITED STATES OF AMERICA,         CASE NO.   2:22-cr-0213 KJM

16                    Plaintiff,      18 U.S.C. § 371 – Conspiracy to Transport Stolen
                                      Property Interstate; 18 U.S.C. § 1956(h) – Conspiracy
17              v.                    to Launder Money; 18 U.S.C. § 2314 – Interstate
                                      Transportation of Stolen Property (4 counts); 31
18 NAVIN KHANNA,                      U.S.C. § 5324(a)(3) and (d)(2) – Structuring Currency
     aka Lovin Khanna,                Transactions (13 counts); 18 U.S.C. § 1957(a) –
19 TINU KHANNA,                       Monetary Transactions with Proceeds of Specified
     aka Gagan Khanna,                Unlawful Activity (17 counts); 18 U.S.C.
20 DANIEL DOLAN,                      § 1956(a)(l)(B)(i) – Concealment Money Laundering
   CHI MO,                           (4 counts); 18 U.S.C. § 981(a)(1)(C), 28 U.S.C.
21   aka David Mo,                    § 2461(c), 18 U.S.C. § 982(a)(l), and 31 U.S.C.
   WRIGHT LOUIS MOSLEY,              § 5317(c)(1) - Criminal Forfeiture.
22 ISHU LAKRA,
   TOU SUE VANG,
23 ANDREW VANG, and
   MONICA MOUA,
24
                       Defendants.
25

26                         I N D I C T M E N T

27 COUNT ONE: [18 U.S.C. § 371 – Conspiracy to Transport Stolen Property Interstate]

28      The Grand Jury charges:

NAVIN KHANNA aka Lovin Khanna, TINU KHANNA aka Gagan Khanna, DANIEL DOLAN, CHI MO aka David Mo, WRIGHT LOUIS MOSLEY, ISHU LAKRA, TOU SUE VANG, ANDREW VANG, and MONICA MOUA,

defendants herein, as follows:

## INTRODUCTION

At all relevant times,

1.      TOU SUE VANG ("T. VANG"), ANDREW VANG ("A. VANG"), and MONICA MOUA ("MOUA") lived in the County of Sacramento in the Eastern District and State of California.

2.      Vang Auto LLC or Vang Auto Core LLC ("VANG AUTO") was a purported automotive dismantler business operated by T. VANG, A. VANG, and MOUA in the County of Sacramento in the Eastern District and State of California whose license was suspended in November 2020.  T. VANG and A. VANG were co-owners of VANG AUTO.

3.      NAVIN KHANNA aka Lovin Khanna ("N. KHANNA"), TINU KHANNA aka Gagan Khanna ("T. KHANNA"), DANIEL DOLAN ("DOLAN"), CHI MO aka David Mo ("MO"), WRIGHT LOUIS MOSLEY ("MOSLEY"), and ISHU LAKRA ("LAKRA") lived in the State of New Jersey.

4.      DG Auto Parts LLC aka DG Auto Wreckers ("DG AUTO") was a catalytic converter extraction company operated by N. KHANNA, T. KHANNA, DOLAN, MO, MOSLEY, LAKRA, and others in the State of New Jersey.

5.      "Metal Refinery" (true name obscured) was a metal refinery company operating in New Jersey and elsewhere that frequently purchased precious metals from DG AUTO.

## BACKGROUND ON CATALYTIC CONVERTER THEFT

6.      Catalytic converters are a component of an automotive vehicle's exhaust device that reduce the toxic gas and pollutants from a vehicle's internal combustion engine into safe emissions by catalyzing a redox reaction process.  Catalytic converters use precious metals in their center or "core" and are regularly targeted for theft due to the high value of these metals.  Catalytic converters are required components on all combustion engine automobiles in the United States as regulated by the Environmental Protection Agency ("EPA").  Every individual state in the United States dictates emission standards for their catalytic converters, which makes the concentration of precious metals in

1  catalytic converters vary from state-to-state. Thus, if an individual state requires higher emission
2  standards, such as California, the catalytic converters on vehicles registered in that state will contain a
3  higher concentration of precious metals.

4       7.     Thieves steal catalytic converters from vehicles for the precious metals the cores contain,
5  including palladium, platinum, and rhodium. Some of these precious metals are more valuable per
6  ounce than gold and their value has been increasing in recent years. The black-market price for certain
7  catalytic converters can be above $1,000 each. Catalytic converters are often stolen from the underside
8  of vehicles by using handheld power tools (including reciprocating saws, sawzalls, pneumatic or
9  hydraulic pipe-cutters, or oxy-acetylene gas cutting torches) and automotive tools (floor jacks and jack
10 stands), and their theft can be completed within a few minutes or less. Additionally, catalytic converters
11 often lack unique serial numbers, VIN information, or other distinctive identification features, making
12 them difficult to trace to their lawful owner. Thus, the theft of catalytic converters has become
13 increasingly popular because of their value, relative ease to steal, and their lack of identifying markings.

14      8.     Catalytic converter thieves are well informed about which vehicle makes and models
15 contain the most precious metals in their catalytic converters. Thieves typically obtain pricing
16 information from an online pricing application. In particular, the design of the Toyota Prius and other
17 hybrid vehicles employ a very high concentration of palladium in their catalytic converters. Therefore,
18 they are targeted by thieves for their high value, specifically the 2004-2009 model years. Catalytic
19 converter thieves (sometimes referred to as "cutters") often conduct searches in residential
20 neighborhoods, parking lots, and other locations to steal the most high-value catalytic converters.
21 Catalytic converter theft has become a nationwide problem across a multitude of state, local, and federal
22 jurisdictions. The theft of a vehicle's catalytic converter results in damage that renders the vehicle
23 inoperable until properly replaced. Not only are the vehicles often mechanically unable to be driven, but
24 they are also not legally operable under the EPA regulations until repaired.

25      9.     The process to remove the precious metals from the catalytic converters is complex and
26 may release toxic gases. Therefore, catalytic converters are typically sold intact to an extraction
27 company. The extraction company will remove the core from the catalytic converter using a "de-
28 canning" process that crushes the honeycomb structure (or "brick") inside the core, resulting in precious

INDICTMENT

3

1    metal powders.  The process of de-canning will crush the core or brick inside the catalytic converters;

2    new bricks are not available for sale to the general public.  The precious metal powders are then sold to

3    a metal refinery for further processing.

4                                    THE CONSPIRACY

5            10.    From in or about October 2019, and continuing through in or about October 2022, in the

6    State and Eastern District of California and elsewhere, N. KHANNA, T. KHANNA, DOLAN, MO,

7    MOSLEY, LAKRA, T. VANG, A. VANG, and MOUA knowingly and willfully combined, conspired,

8    confederated, and agreed with each other and others known and unknown to the Grand Jury to commit

9    certain offenses against the United States, that is, to transport, transmit, and transfer in interstate and

10   foreign commerce goods, wares, and merchandise having a value of $5,000 or more, knowing the same

11   to have been stolen, converted, and taken by fraud, in violation of Title 18, United States Code, Section

12   2314.

13           11.    The purpose of the conspiracy was for N. KHANNA, T. KHANNA, DOLAN, MO,

14   MOSLEY, LAKRA, T. VANG, A. VANG, MOUA, and others to transport catalytic converters they

15   knew to be stolen across interstate lines from California and elsewhere to New Jersey, where the

16   precious metal powders were extracted and sold for a profit to the Metal Refinery, all in order to enrich

17   the conspirators.

18                                   MANNER AND MEANS

19           The manner and means by which N. KHANNA, T. KHANNA, DOLAN, MO, MOSLEY,

20   LAKRA, T. VANG, A. VANG, and MOUA, and others sought to accomplish the objects of the

21   conspiracy included, among others, the following:

22           12.    T. VANG, N. KHANNA, DOLAN, and others coordinated multiple shipments of stolen

23   catalytic converters from California to New Jersey.  T. VANG would sometimes send N. KHANNA

24   copies of shipping manifests for these shipments, which typically weighed thousands of pounds and

25   included hundreds of stolen catalytic converters.  N. KHANNA ordinarily confirmed the arrival of the

26   shipments in New Jersey, including through electronic communications with T. Vang.  DOLAN and N.

27   KHANNA typically confirmed the contents and value of the stolen catalytic converter shipments with T.

28   VANG after the shipments had arrived in New Jersey.

13.     On May 29, 2019, T. VANG and A. VANG obtained a California business license to operate VANG AUTO. T. VANG, A. VANG, and MOUA operated VANG AUTO from their personal residence, located at 7331 Meadowgate Drive, in Sacramento, California (the "Meadowgate Residence"). On November 2, 2020, the license was suspended by the California Franchise Tax Board. T. VANG, A. VANG, and MOUA continued to operate VANG AUTO after the license was suspended.

14.     T. VANG and A. VANG opened the following bank accounts in the name of VANG AUTO:

    a)     On October 21, 2019, T. VANG opened a Bank of America account number ending in 1224 ("BOA Account 1224"), in the name of VANG AUTO, and he was the sole signatory on the account.

    b)     On February 13, 2020, T. VANG and A. VANG opened a Wells Fargo Bank account number ending in 7846 ("WF Account 7846") in the name of VANG AUTO, and T. VANG and A. VANG were the signatories on the account (collectively, the "VANG AUTO bank accounts").

15.     At the Meadowgate Residence and elsewhere, T. VANG, A. VANG, and MOUA purchased catalytic converters they knew were stolen from local thieves and cutters. T. VANG, A. VANG, and MOUA paid these thieves in cash that T. VANG and A. VANG withdrew from the VANG AUTO bank accounts.

16.     T. VANG and A. VANG stored the stolen catalytic converters in various locations, including storage unit facilities, until they were ready to be shipped to DG AUTO in New Jersey, at which point the conspirators would coordinate the interstate shipments.

17.     T. VANG and A. VANG used various private commercial shipping companies to ship the stolen catalytic converters to DG AUTO locations in New Jersey, and sometimes provided the shipping manifests from these companies to N. KHANNA.

18.     On February 4, 2020, N. KHANNA incorporated DG AUTO as a catalytic converter recycling company that was operating in multiple locations in New Jersey, including Freehold, Wall Township, and Wrightstown. N. KHANNA was the president of DG AUTO and T. KHANNA, DOLAN, MO, MOSLEY, and LAKRA were employees of DG AUTO.

19.     Individuals and dismantler businesses typically transported and shipped whole catalytic converters to sell to DG AUTO's facilities in New Jersey from California and other states.  There, DG AUTO removed the core from the catalytic converters using a "de-canning" machine and other processes that extracted the powdered precious metals from the catalytic converters.  DG AUTO then packaged and transported the resulting powders to a metal refinery for further processing.  DG AUTO also purchased stolen "bricks" prior to their insertion into catalytic converters, which did not need to be "de-canned" for sale directly to a metal refinery.

20.     To increase their customer base, encourage the theft of the highest-value converters, and enable their affiliates to accurately price different catalytic converters, MO and other DG AUTO employees created and operated the DG AUTO Pricing Application, which was an application for both Apple and Android platforms that provided real-time pricing information for catalytic converter thieves and their customers such as VANG AUTO.  DG AUTO charged subscription fees and purchased credits that enabled users to look up the price that DG AUTO would pay for a specific catalytic converter on that date, which would change based on the market rates for the precious metals.  T. VANG and others used the DG AUTO Pricing Application to determine what prices to pay catalytic converter thieves for stolen catalytic converters and what prices to invoice DG AUTO for the interstate shipments of stolen catalytic converters to New Jersey.

21.     DG AUTO and its employees, including DOLAN, advertised on Facebook that they would purchase catalytic converters and offered to cover the shipping expenses for large loads.

22.     N. KHANNA, T. KHANNA, DOLAN, MO, MOSLEY, and LAKRA knew that at least some of the catalytic converters and bricks they purchased had been stolen, including bricks and catalytic converters transported from California, including from VANG AUTO.  They also knew that some of their customers, including VANG AUTO, were not licensed scrap dealers.

23.     DOLAN, MO, MOSLEY, and LAKRA worked in the DG AUTO warehouse, where they would sort and grade stolen catalytic converters prior to their purchase by DG AUTO.  DOLAN would also travel to other states to grade and purchase stolen catalytic converters for DG AUTO and arrange their transportation to New Jersey.

24.     N. KHANNA and T. KHANNA opened the following bank accounts in the name of DG

AUTO:

    a)    Bank of America account ending 9405 ("BOA Account 9405"), opened July 8, 2019, with N. KHANNA and Person 1 as the signatories;

    b)    TD Bank account ending in 6004 ("TD Account 6004"), opened February 5, 2020, with N. KHANNA and T. KHANNA as signatories, and Person 1 added to the account on March 18, 2020;

    c)    Wells Fargo Bank account ending in 1308 ("WF Account 1308"), opened March 4, 2021, with N. KHANNA and T. KHANNA as signatories;

    d)    Valley National Bank account ending in 5035 ("VNB Account 5035"), opened April 1, 2021, with N. KHANNA and T. KHANNA as signatories; and

    e)    Investors Bank account ending in 8534 ("IB Account 8534"), opened November 4, 2021, with N. KHANNA and T. KHANNA as signatories (collectively, the "DG AUTO bank accounts").

25.    N. KHANNA, T. KHANNA, and others working with them and at their direction and control, caused money to be transferred from DG AUTO bank accounts to customers who supplied stolen whole catalytic converters and bricks, via intrabank transfers, wire transfers, checks, and currency.  For example, N. KHANNA and T. KHANNA caused over $38 million to be transferred and wired from the DG AUTO bank accounts to the VANG AUTO bank accounts in payment for stolen catalytic converters that had been shipped from California to New Jersey.

OVERT ACTS

In furtherance of the conspiracy, and to accomplish its objects and purposes, at least one of the conspirators committed, or caused to be committed, in the Eastern District of California and elsewhere, on or about the dates indicated, the following overt acts, among others:

26.    On September 3, 2020, T. VANG shipped approximately 300 stolen Toyota Prius catalytic converters from California to New Jersey via a private commercial shipping company and sold them to N. KHANNA and DG AUTO.

27.    On September 11, 2020, N. KHANNA and T. KHANNA caused $400,000 to be wired from the DG AUTO TD Account 6004 to the VANG AUTO WF Account 7846.

28. On April 13, 2021, T. VANG shipped two boxes of stolen catalytic converters with a combined weight of 4,370 pounds via a private commercial shipping company from VANG AUTO in Elk Grove, California, to N. KHANNA and DG AUTO in Wall Township, New Jersey.

29. On April 19, 2021, T. VANG sent to N. KHANNA a copy of the private commercial shipping company manifest for the April 13, 2021 shipment and discussed the shipment.

30. On April 21, 2021, N. KHANNA caused DG AUTO IB Account 8534 to wire $570,000 to VANG AUTO WF Account 7846 in payment for one of the boxes T. VANG had shipped on April 13, 2021.

31. On April 26, 2021, T. VANG and N. KHANNA discussed the contents and price of the catalytic converters in the other box T. VANG had sent to N. KHANNA on April 13, 2021. That same day, N. KHANNA caused DG AUTO IB Account 8534 to wire $405,500 to VANG AUTO WF Account 7846.

32. On May 4, 2021, T. VANG and A. VANG purchased three purportedly stolen catalytic converters for $600 in currency from a Confidential Informant ("CI-1") during a monitored and recorded sale at the Meadowgate Residence.

33. On May 19, 2021, T. VANG, A. VANG, and MOUA purchased two purportedly stolen catalytic converters (a Toyota Prius catalytic converter and a Mercedes catalytic converter) from CI-1 for $1,600 in currency during a monitored and recorded sale at the Meadowgate Residence. CI-1 told A. VANG that it was hard to get Prius catalytic converters, but CI-1 "stole" this catalytic converter from a car and it was "the second time" that CI-1 "took" the catalytic converter from the same Toyota Prius. In response, T. VANG admonished CI-1, saying, "For future reference, don't say they are stolen." T. VANG and A. VANG discussed the price, and T. VANG determined the final price of $1,600, which A. VANG handed to CI-1 in currency.

34. On June 9, 2021, A. VANG purchased two purportedly stolen Toyota Prius catalytic converters for $2,400 in currency from CI-1 during a monitored and recorded sale at the Meadowgate Residence.

35. On July 1, 2021, A. VANG purchased two purportedly stolen catalytic converters for $2,200 in currency from CI-1 during a monitored and recorded sale at the Meadowgate Residence.

36.     On July 15, 2021, T. VANG and A. VANG purchased two purportedly stolen catalytic converters for $2,400 in currency from CI-1 during a monitored and recorded sale at the Meadowgate Residence.

37.     On August 25, 2021, A. VANG and MOUA purchased two purportedly stolen Toyota Prius catalytic converters for $2,000 in currency during a monitored and recorded sale at the Meadowgate Residence.  MOUA told CI-1 to conceal the catalytic converters when bringing them into the Meadowgate Residence.  A. VANG told CI-1, "See if you can cover it better," and explained that concealment was necessary because another customer had come to the Meadowgate Residence in a stolen car followed by the police, which "brought hella heat over [t]here" and so they were "telling people to cover up."  MOUA provided CI-1 $2,000 in currency for the converters.

38.     On January 24, 2022, T. VANG shipped two boxes of stolen catalytic converters with a combined weight of 2,776 pounds via a private commercial shipping company from VANG AUTO in Elk Grove, California, to N. KHANNA and DG AUTO in Freehold, New Jersey.  One of the boxes contained mostly Toyota Prius catalytic converters and the other contained mostly Honda catalytic converters.

39.     On January 25, 2022, T. VANG sent to N. KHANNA a copy of the private commercial shipping company manifest for the January 24th shipment.

40.     On January 27, 2022, T. VANG and N. KHANNA discussed the contents and pricing for the January 24th shipment.

41.     On January 27, 2022, N. KHANNA caused DG AUTO IB Account 8534 to wire $206,285 to VANG AUTO WF Account 7846 for one of the boxes shipped on January 24, 2022.

42.     On February 3, 2022, DOLAN sent T. VANG a tally sheet for the other box shipped on January 24, 2022, which listed mostly Toyota Prius catalytic converters.

43.     On February 4, 2022, N. KHANNA caused DG AUTO IB Account 8534 to wire $198,750 to VANG AUTO WF Account 7846.

44.     On February 8, 2022, T. VANG shipped three boxes of stolen catalytic converters labeled "Auto Parts Not Restricted" and weighing 4,417 pounds from VANG AUTO in Elk Grove, California, to N. KHANNA and DG AUTO in Freehold, New Jersey, via a private commercial shipping company.

45.    On February 16, 2022, T. VANG and N. KHANNA discussed the three boxes shipped on February 8, 2022, and their payment.

46.    On February 17, 2022, N. KHANNA caused DG AUTO IB Account 8534 to wire $200,000 to the VANG AUTO WF Account 7846.

47.    On April 7, 2022, DOLAN, LAKRA, and N. KHANNA purchased approximately 53 purportedly stolen catalytic converters for $22,412 from a second confidential informant ("CI-2") during a monitored and recorded sale.  DOLAN assisted in counting and negotiating the value of the catalytic converters.  DOLAN stated to CI-2, "You got these out of Cali."  LAKRA gave CI-2 a check for $22,412 signed by N. KHANNA and issued by the DG AUTO IB Account 8534.

48.    On April 20, 2022, DOLAN, LAKRA, and T. KHANNA purchased approximately 146 purportedly stolen catalytic converters for $73,158 from CI-2 during a monitored and recorded sale. DOLAN and LAKRA graded the catalytic converters for pricing purposes.  DOLAN saw what he thought was blood on one of the catalytic converters and said, "They cut themselves taking the cat."  T. KHANNA sent a wire payment to CI-2 via DG AUTO IB Account 8534.

49.    On May 10, 2022, N. KHANNA sent T. VANG and DOLAN an image of an invoice dated May 10, 2022, paid to VANG AUTO for $70,358.00.

50.    On May 13, 2022, N. KHANNA caused DG AUTO IB Account 8534 to wire $70,335 to the VANG AUTO WF Account 7846.

51.    On May 17, 2022, T. KHANNA and DOLAN purchased 170 purportedly stolen catalytic converters for $63,096 from CI-2 during a monitored and recorded sale.  DOLAN observed orange paint on a few of the catalytic converters, which marks the converters as stolen and makes them traceable to their lawful owner, and advised that DG AUTO could not accept the marked catalytic converters or "they would shut us down."  T. KHANNA gave CI-2 the invoice and initiated the wire transfer in payment for the catalytic converters from the DG AUTO IB Account 8534.

52.    On June 2, 2022, T. KHANNA, LAKRA, DOLAN, and MO purchased approximately 283 purportedly stolen catalytic converters for $70,569 from CI-2 during a monitored and recorded sale. LAKRA, DOLAN, and MO sorted and graded the catalytic converters for pricing.  T. KHANNA paid for the catalytic converters via a wire transfer from DG AUTO IB Account 8534.

53. During the June 2, 2022 monitored and recorded sale, N. KHANNA negotiated the future purchase of purportedly stolen new Prius catalytic converters from CI-2. CI-2 told N. KHANNA that CI-2's "cousin" worked at a Toyota warehouse in Ontario, California, and had been able to steal 80-100 new Toyota Prius converters from the warehouse. N. KHANNA offered CI-2 a mark-up of 8% over the market price of a Prius catalytic converter as posted on the DG AUTO Pricing Application on the future day of sale.

54. Also during the June 2, 2022 monitored and recorded sale, N. KHANNA negotiated the future purchase of purportedly stolen new Toyota Prius "bricks" from CI-2. CI-2 handed N. KHANNA two Toyota Prius bricks from CI-2's backpack as a sample for the future purchase. N. KHANNA asked if CI-2 was able to obtain the similar weight, 800 pounds, that CI-2 had sold to him before. CI-2 replied there was only approximately 600 pounds available to sell. N. KHANNA ordered MOSLEY to take the two bricks to the Metal Refinery and get them tested.

55. On June 23, 2022, N. KHANNA, T. KHANNA, and LAKRA purchased approximately 198 various purportedly stolen catalytic converters and 100 purportedly stolen new Prius catalytic converters for $166,670 from CI-2 during a monitored and controlled sale. During a meeting with T. KHANNA, CI-2 handed T. KHANNA a fictitious invoice and explained "the invoice was bullshit" and the only reason they needed the invoice was in case they were pulled over by law enforcement on their way to DG AUTO. T. KHANNA threw the invoice in the trash. CI-2 told T. KHANNA that N. KHANNA had agreed to purchase 100 brand new Prius catalytic converters that CI-2's cousin stole from the Toyota warehouse in California where the cousin supposedly worked. When the 100 new Prius catalytic converters were being unloaded at the DG AUTO warehouse, LAKRA asked, "Where do you get all of these?" A DG AUTO security guard quickly replied, "Don't ask, don't tell policy." Another DG AUTO employee replied, "That's right, stupid question." LAKRA replied, "Obviously, they are from a dealer." The DG AUTO security guard replied, "Whatever it is, I want in." After speaking with N. KHANNA via phone in Hindi, T. KHANNA agreed to pay CI-2 an additional 8% over the normal value for the entire lot of catalytic converters because of the delivery of the 100 new Toyota Prius ones. Then T. KHANNA instructed LAKRA to get the new Prius catalytic converters out of DG AUTO as quickly as possible. T. KHANNA paid $166,670 for the catalytic converters via a wire transfer from

1   DG AUTO IB Account 8534.

2       56.     On July 19, 2022, T. KHANNA, LAKRA, MO, and DOLAN purchased approximately

3   262 purportedly stolen catalytic converters for $99,390 from CI-2 during a monitored and recorded sale.

4   LAKRA, MO, and DOLAN unloaded, inspected, and priced the catalytic converters.  T. KHANNA paid

5   $99,390 for the 262 catalytic converters via a wire transfer from DG AUTO IB Account 8534.

6       57.     During the July 19, 2022 monitored and recorded sale, T. KHANNA discussed the timing

7   of the purchase of the 600-800 pounds of new Toyota Prius bricks from the California Toyota

8   warehouse.  T. KHANNA informed CI-2 that the bricks would have to be assay tested to determine the

9   precious metal contents and set the appropriate price.

10      58.     On August 5, 2022, in a recorded phone call, DOLAN and N. KHANNA discussed the

11  new DG AUTO protocols to not pay customers outside of New Jersey with cash.  N. KHANNA

12  explained that it was too risky for DG AUTO employees to travel with cash because law enforcement

13  was "busting everybody."  N. KHANNA also said that DG AUTO employees would not be "traveling

14  with cash" because it was "illegal" and being called "racketeering" and buying a catalytic converter with

15  cash would be "committing a crime."

16      59.     On August 18, 2022, CI-2 delivered two purportedly stolen Toyota Prius catalytic

17  converter bricks to N. KHANNA during a monitored and recorded interaction.  CI-2 explained to N.

18  KHANNA how they had been stolen by the cousin from the Toyota warehouse.  N. KHANNA ordered

19  MOSLEY to take the two bricks to be tested by the Metal Refinery.  N. KHANNA negotiated with CI-2

20  regarding the price for the upcoming sale of the purportedly stolen catalytic converter bricks and agreed

21  to pay 10% above the DG AUTO Pricing Application listed price for a Toyota Prius catalytic converter

22  on the day of the sale.

23      60.     On September 1, 2022, N. KHANNA, T. KHANNA, DOLAN, and LAKRA purchased

24  approximately 402 purportedly stolen brand new Toyota Prius catalytic converter bricks and 98

25  purportedly stolen assorted used catalytic converters for $259,200 from CI-2 during a monitored and

26  recorded sale.  The 98 used catalytic converters were delivered to the DG AUTO salvage yard where N.

27  KHANNA, T. KHANNA, DOLAN, and LAKRA were present.  Then N. KHANNA and CI-2 delivered

28  the bricks directly to the Metal Refinery.  During the drive, CI-2 described again how the bricks had

1  been stolen from the Toyota warehouse by CI-2's cousin.  N. KHANNA and CI-2 returned to DG

2  AUTO and discussed the transaction with T. KHANNA and LAKRA.  T. KHANNA instructed

3  LAKRA to pay CI-2 $50,000 in currency, which LAKRA did.

4        61.  On September 2, 2022, T. KHANNA caused DG AUTO IB Account 8534 to wire

5  $209,200 to CI-2 for the remaining purchase price for the purportedly stolen bricks and converters

6  purchased from CI-2 on September 1, 2022.

7        62.  Between October 21, 2019, and February 29, 2020, T. KHANNA and N. KHANNA sent

8  and caused to be sent wire and intrabank transfers from DG AUTO bank accounts to the VANG AUTO

9  BOA Account 1224 totaling approximately $2,079,085.

10        63.  Between February 13, 2020, and May 31, 2022, T. KHANNA and N. KHANNA sent and

11  caused to be sent wire transfers from the DG AUTO bank accounts to the VANG AUTO WF Account

12  7846 totaling approximately $36,128,461.

13        All in violation of Title 18, United States Code, Section 371.

14

15  COUNT TWO: [18 U.S.C. § 1956(h) – Conspiracy to Commit Money Laundering]

16        The Grand Jury further charges:

17      NAVIN KHANNA aka Lovin Khanna, TINU KHANNA aka Gagan Khanna, TOU SUE VANG and

18                        ANDREW VANG,

19  defendants herein, as follows:

20        64.  Paragraphs 1 through 9 and 11 through 63 of Count One are incorporated herein by

21  reference.

22                      THE CONSPIRACY

23        65.  From in or about October 2019, and continuing through in or about October 2022, in the

24  County of Sacramento, in the State and Eastern District of California and elsewhere, N. KHANNA, T.

25  KHANNA, T. VANG, and A. VANG conspired, confederated, and agreed with each other and others

26  known and unknown to the Grand Jury to commit certain offenses against the United States, that is,

27  knowing that the property involved in financial transactions represented the proceeds of some form of

28  unlawful activity, did knowingly conspire to conduct such financial transactions which in fact involved

the proceeds of specified unlawful activity, namely the interstate transportation of stolen property in violation of 18 U.S.C. § 2314, with the intent to promote the carrying on of such specified unlawful activity in violation of 18 U.S.C. § 1956(a)(1)(A)(i).

<u>MANNER AND MEANS</u>

66.   N. KHANNA and T. KHANNA sold precious metals extracted from stolen catalytic converters to the Metal Refinery for profit.

67.   N. KHANNA and T. KHANNA used the proceeds from the Metal Refinery to pay co-conspirators from whom they knowingly purchased stolen catalytic converters, including T. VANG and A. VANG.  Specifically, N. KHANNA and T. KHANNA wired and transferred money from the DG AUTO bank accounts they controlled to VANG AUTO bank accounts as payments for catalytic converters they knew had been stolen and shipped from California to New Jersey, thereby promoting the carrying on of the unlawful activity.

68.   T. VANG and A. VANG used the funds they received from N. KHANNA and T. KHANNA and withdrew cash from the VANG AUTO bank accounts they controlled to purchase more stolen catalytic converters, thereby promoting the carrying on of the unlawful activity.

69.   Between July 8, 2019, and June 30, 2022, N. KHANNA and T. KHANNA received wire payments from the Metal Refinery into the DG AUTO bank accounts totaling approximately $545,749,541.  These funds were in payment to N. KHANNA and T. KHANNA for the whole bricks and powdered precious metals extracted from catalytic converters and sold to the Metal Refinery, including catalytic converters and bricks N. KHANNA and T. KHANNA knew had been stolen.

70.   N. KHANNA and T. KHANNA transferred and caused to be transferred money via wire transfers, checks, and currency from the DG AUTO bank accounts to customers who supplied stolen catalytic converters and bricks to DG AUTO.

71.   Between October 21, 2019, and February 29, 2020, N. KHANNA and T. KHANNA sent wire and interbank transfers to the VANG AUTO BOA Account 1224 totaling $2,079,085.  These funds were payments to T. VANG and A. VANG for stolen catalytic converters VANG AUTO had sold and shipped to DG AUTO.

72.   T. VANG and A. VANG withdrew $1,894,341.51 in U.S. currency from the VANG

AUTO BOA Account 1224, including for the purpose of paying cash to catalytic converter thieves for stolen catalytic converters.

73.     Between February 13, 2020, and May 31, 2022, N. KHANNA and T. KHANNA sent wire transfers from DG AUTO bank accounts to the VANG AUTO WF Account 7846 totaling approximately $36,128,461.  These funds were payments to T. VANG and A. VANG for stolen catalytic converters they had sold and shipped to DG AUTO.

74.     Between February 13, 2020, and May 31, 2022, T. VANG and A. VANG withdrew $32,594,873 in U.S. currency from the VANG AUTO WF Account 7846, including for the purpose of paying cash to thieves for more stolen catalytic converters.

All in violation of Title 18, United States Code Sections 1956(h).

COUNTS THREE through SIX: [18 U.S.C. § 2314 – Interstate Transportation of Stolen Property]

The Grand Jury further charges T H A T:

NAVIN KHANNA aka Lovin Khanna, TOU SUE VANG, and DANIEL DOLAN, defendants herein, on or about the dates set forth below as to each count, in the State and Eastern District of California, transported, transmitted, and transferred in interstate commerce goods, wares, and merchandise of the value of $5,000 or more, that is catalytic converters, knowing the same to have been stolen:

| Count | Transportation on or About Date | Value | Defendants |
|-------|--------------------------------|-------|------------|
| 3 | September 3, 2020 | $400,000 | N. KHANNA and T. VANG |
| 4 | April 13, 2021 | $975,500 | N. KHANNA and T. VANG |
| 5 | January 24, 2022 | $405,035 | N. KHANNA, T. VANG, and DOLAN |
| 6 | February 8, 2022 | $270,335 | N. KHANNA and T. VANG |

All in violation of Title 18, United States Code, Sections 2 and 2314.

///

INDICTMENT

15

COUNTS SEVEN THROUGH NINETEEN: [31 U.S.C. § 5324(a)(3) and (d)(2) – Structuring Currency Transactions]

The Grand Jury further charges T H A T:

TOU SUE VANG,

defendant herein, on or about the dates set forth below, in the County of Sacramento, State and Eastern District of California, and elsewhere, did knowingly and for the purpose of evading the reporting requirements of section 5313(a) of Title 31, United States Code, and the regulations promulgated thereunder, did structure and attempt to structure, under Section 5313(a) of Title 31 of the United States Code, and the regulations promulgated thereunder, to prevent and attempt to prevent a domestic financial institution, to wit: Bank of America, from filing Currency Transaction Reports when he structured the following cash withdrawals from Vang Auto's Bank of America account ending 1244 ("BOA Account 1224"):

| Count | On or About Date | Amt. Cash Withdrawal | Branch Location of Cash Withdrawal from VANG AUTO BOA Account 1224 |
|-------|------------------|----------------------|-------------------------------------------------------------------|
| 7 | November 5, 2019 | $10,000.00 | 7198 Stockton Blvd, Sacramento, CA |
| | | $10,000.00 | 5744 Stockton Blvd, Sacramento, CA |
| | | $10,000.00 | 8959 Elk Grove Blvd, Elk Grove, CA |
| 8 | November 8, 2019 | $10,000.00 | 7198 Stockton Blvd, Sacramento, CA |
| | | $10,000.00 | 5744 Stockton Blvd, Sacramento, CA |
| | | $10,000.00 | 8959 Elk Grove Blvd, Elk Grove, CA |
| 9 | November 12, 2019 | $10,000.00 | 940 Florin Road, Sacramento, CA |
| | | $10,000.00 | 8959 Elk Grove Blvd, Elk Grove, CA |
| | | $10,000.00 | 10046 Bruceville Road, Elk Grove, CA |
| | | $10,000.00 | 7198 Stockton Blvd, Sacramento, CA |
| | | $10,000.00 | 5744 Stockton Blvd, Sacramento, CA |
| 10 | November 13, 2019 | $10,000.00 | 10046 Bruceville Road, Elk Grove, CA |
| | | $10,000.00 | 940 Florin Road, Sacramento CA |
| | | $10,000.00 | 8959 Elk Grove Blvd, Elk Grove, CA |
| | | $10,000.00 | 5001 Laguna Blvd, Elk Grove, CA |
| | | $10,000.00 | 7198 Stockton Blvd, Sacramento, CA |
| 11 | November 25, 2019 | $10,000.00 | 940 Florin Road, Sacramento, CA |

| | | | |
|---|---|---|---|
| | | $10,000.00 | 7198 Stockton Blvd, Sacramento, CA |
| | | $10,000.00 | 5744 Stockton Blvd, Sacramento, CA |
| 12 | November 29, 2019 | $10,000.00 | 940 Florin Road, Sacramento, CA |
| | | $10,000.00 | 7198 Stockton Blvd, Sacramento, CA |
| | | $10,000.00 | 5744 Stockton Blvd, Sacramento, CA |
| 13 | December 26, 2019 | $10,000.00 | 5001 Laguna Blvd, Elk Grove, CA |
| | | $10,000.00 | 8959 Elk Grove Blvd, Elk Grove, CA |
| | | $10,000.00 | 10046 Bruceville Road, Elk Grove, CA |
| | | $10,000.00 | 7198 Stockton Blvd, Sacramento, CA |
| 14 | December 27, 2019 | $10,000.00 | 5001 Laguna Blvd, Elk Grove, CA |
| | | $10,000.00 | 10046 Bruceville Road, Elk Grove, CA |
| | | $10,000.00 | 8959 Elk Grove Blvd, Elk Grove, CA |
| 15 | January 14, 2020 | $10,000.00 | 7198 Stockton Blvd, Sacramento, CA |
| | | $10,000.00 | 5744 Stockton Blvd, Sacramento, CA |
| | | $10,000.00 | 5001 Laguna Blvd, Elk Grove, CA |
| | | $10,000.00 | 8959 Elk Grove Blvd, Elk Grove, CA |
| 16 | January 15, 2020 | $10,000.00 | 8959 Elk Grove Blvd, Elk Grove, CA |
| | | $10,000.00 | 10046 Bruceville Road, Elk Grove, CA |
| | | $10,000.00 | 5744 Stockton Blvd, Sacramento, CA |
| 17 | January 21, 2020 | $10,000.00 | 5001 Laguna Blvd, Elk Grove, CA |
| | | $10,000.00 | 5744 Stockton Blvd, Sacramento, CA |
| | | $10,000.00 | 10046 Bruceville Road, Elk Grove, CA |
| | | $10,000.00 | 7198 Stockton Blvd, Sacramento, CA |
| 18 | January 22, 2020 | $10,000.00 | 8959 Elk Grove Blvd, Elk Grove, CA |
| | | $10,000.00 | 7198 Stockton Blvd, Sacramento, CA |
| | | $10,000.00 | 5744 Stockton Blvd, Sacramento, CA |
| 19 | January 23, 2020 | $10,000.00 | 10046 Bruceville Road, Elk Grove, CA |
| | | $10,000.00 | 8959 Elk Grove Blvd, Elk Grove, CA |
| | | $10,000.00 | 7198 Stockton Blvd, Sacramento, CA |

Enhanced Penalty Allegation for Aggravated Cases: [31 U.S.C. § 5324(d)(2)]

The grand jury further alleges that TOU SUE VANG committed each violation of 31 U.S.C. 5324(a)(3) charged in Counts Seven through Nineteen while violating another law of the United States

INDICTMENT

1   and as part of a pattern of illegal activity involving more than $100,000 in a 12-month period.

2   All in violation of Title 31, United States Code, Section 5324(a)(3) and (d)(2).

3

4   COUNT TWENTY: [18 U.S.C. § 1957(a) – Monetary Transactions with Proceeds of Specified
                  Unlawful Activity]

5

6          The Grand Jury further charges: T H A T

7                       TOU SUE VANG and MONICA MOUA,

8   defendants herein, on or about December 29, 2019, in the County of Sacramento, State and Eastern

9   District of California, and elsewhere did knowingly engage and attempt to engage in a monetary

10  transaction by, through, and to a financial institution, affecting interstate and foreign commerce, in

11  criminally derived property of a value greater than $10,000, that is, withdrawal and transfer of $34,000

12  for the purchase of a 2020 Toyota Rav 4, VIN: 2T3P1RFV7LC067683, registered in the name of

13  MOUA, such property having been derived from a specified unlawful activity, that is violations of Title

14  18, United States Code, Section 2314, the Interstate Transportation of Stolen Property, knowing that the

15  property involved in the financial transactions represented the proceeds of some form of unlawful

16  activity, in violation of Title 18, United States Code, Sections 2 and 1957(a).

17

18  COUNTS TWENTY-ONE THROUGH THIRTY-SIX: [18 U.S.C. § 1957(a) – Monetary Transactions
                                            with Proceeds of Specified Unlawful Activity]

19

20         The Grand Jury further charges: T H A T

21                       TOU SUE VANG,

22  defendant herein, on or about the dates set forth below, in the Counties of Sacramento and Placer, State

23  and Eastern District of California, and elsewhere, did knowingly engage and attempt to engage in the

24  following monetary transactions, by, through, and to a financial institution, affecting interstate and

25  foreign commerce,  in criminally derived property of a value greater than $10,000.00, as specified below

26  for each transaction, such property having been derived from a specified unlawful activity, that is,

27  violations of Title 18, United States Code, Section 2314, the Interstate Transportation of Stolen

28  Property, knowing that the property involved in the financial transactions represented the proceeds of

some form of unlawful activity:

| Count | On or About Date | Amount | Transaction Description |
|-------|------------------|--------|-------------------------|
| 21 | November 19, 2019 | $29,275.43 | Cashier's check #0802117819 drawn on Bank of America ("BOA") Account 1224, payable to Elk Grove Toyota for a 2019 Toyota Highlander (VIN: 5TDJZRFH6KS624526). |
| 22 | July 9, 2020 | $30,000.00 | Wire transfer from Wells Fargo ("WF") Account 7846 to Rick Hollenback/Synergy Motorsports. |
| 23 | July 14, 2020 | $15,000.00 | Wire transfer from WF Account 7846 to Rick Hollenback/Synergy Motorsports. |
| 24 | September 17, 2020 | $40,613.35 | Cashier's check # 0030505367 drawn on WF Account 7846, paid to Elk Grove Ford for a 2020 Ford F-250 pickup (VIN: 1FT7W2BT8LEE33122). |
| 25 | November 10, 2020 | $60,000.00 | Wire transfer from WF Account 7846 to Koza Automotive and Performance. |
| 26 | December 18, 2020 | $423,514.30 | Two Wire transfers from WF Account 7846 to First American Title Company escrow number 3402-6450858 for real property located at 8201 Home Country Way, Sacramento, California (Sacramento County APN: 115-0252-015-0000). |
| 27 | March 18, 2021 | $82,650.00 | Wire transfer from WF Account 7846 to Dynapack International LLC. |
| 28 | May 4, 2021 | $24,500.00 | Wire transfer from WF Account 7846 to Dynapack International LLC. |
| 29 | July 9, 2021 | $25,000.00 | Wire transfer from WF Account 7846 to Koza Automotive and Performance. |
| 30 | August 31, 2021 | $142,355.13 | Electronic transfers from WF Account 7846 to Tesla Motors for a 2021 Tesla Model S (VIN: 5YJSA1E60MF438579). |
| 31 | September 28, 2021 | $62,738.51 | Electronic transfers from WF Account 7846 to Tesla Motors for a 2021 Tesla Model 3 (VIN: 5YJ3E1EC6MF077454). |
| 32 | November 3, 2021 | $24,437.50 | Wire transfer from WF Account 7846 to Dynapack International LLC |
| 33 | December 13, 2021 | $35,000.00 | Wire transfer from WF Account 7846 to Stewart Title Company escrow number DG-54638454-NM, for the purchase of real property located at 6148 20th Street, Rio Linda, California (Sacramento County APN: 215-0111-001-0000). |

| 34 | December 20, 2021 | $1,201,222.25 | Wire transfer from WF Account 7846 to Stewart Title Company escrow number DG-54638454-NM, for the purchase of real property located at 6148 20th Street, Rio Linda, California (Sacramento County APN: 215-0111-001-0000). |
| 35 | June 2, 2022 | $140,000.00 | Wire transfer from WF Account 7846 to a private party for a 2000 Acura NSX (VIN: JH4NA2163YT000150). |
| 36 | June 28, 2022 | $40,000.00 | Wire transfer from WF Account 7846 to a private party for a 2013 Subaru BRZ (VIN: JF1ZCAC15D1601032). |

All in violation of Title 18, United States Code, Sections 2 and 1957(a).

COUNTS THIRTY-SEVEN THROUGH FORTY: [18 U.S.C. § 1956(a)(1)(B)(i) – Concealment Money Laundering]

The Grand Jury further charges: T H A T

TOU SUE VANG,

defendant herein, on or about the following dates, in the Counties of Sacramento and Placer, State and Eastern District of California, and elsewhere did knowingly conduct a financial transaction affecting interstate commerce, which involved the proceeds of a specified unlawful activity, namely violations of Title 18, United States Code, Section 2314, Interstate Transportation of Stolen Property, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership or the control of the proceeds:

| Count | On or About Date | Amount | Transaction Description |
| --- | --- | --- | --- |
| 37 | August 7, 2020 | $65,375.00 | U.S. currency paid to Roseville Toyota for a 2020 Toyota Tundra pickup (VIN: 5TFDY5F10LX947512), registered with the State of California DMV in the name of Person 2. |
| 38 | April 9, 2021 | $42,319.00 | U.S. currency paid to Roseville Powersports for two 2021 SeaDoos (VIN: YDV33995L021 and VIN: YDV34086L021) and a Zieman J2 trailer (VIN: 1ZCS15018MZ359258), all registered with the State of California DMV in the name of Person 2. |
| 39 | December 13, 2021 | $35,000.00 | Wire transfer from WF Account 7846 to Stewart Title Company escrow number DG-54638454-NM, for the |

| | | | |
|---|---|---|---|
| | | | purchase of real property located at 6148 20th Street, Rio Linda, California (Sacramento County APN: 215-0111-001-0000), purchased in the names of Person 3 and Person 4. |
| 40 | December 20, 2021 | $1,201,222.25 | Wire transfer from WF Account 7846 to Stewart Title Company escrow number DG-54638454-NM, for the purchase of real property located at 6148 20th Street, Rio Linda, California (Sacramento County APN: 215-0111-001-0000), purchased in the names of Person 3 and Person 4. |

All in violation of Title 18, United States Code, Sections 2 and 1956(a)(1)(B)(i).

FORFEITURE ALLEGATION: [18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), 18 U.S.C. § 982(a)(l), and 31 U.S.C. § 5317(c)(1) - Criminal Forfeiture]

1.      Upon conviction of one or more of the offenses alleged in Counts One and Three through Six of this Indictment, defendants NAVIN KHANNA, TINU KHANNA, DANIEL DOLAN, CHI MO, WRIGHT LOUIS MOSLEY, ISHU LAKRA, TOU SUE VANG, ANDREW VANG, and MONICA MOUA shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, which constitutes or is derived from proceeds traceable to such violations, including but not limited to the following:

        a.      A sum of money equal to the total amount of proceeds traceable to such offenses, for which the defendants are convicted.

2.      Upon conviction of one or more of the offenses alleged in Counts Two and Twenty through Forty of this Indictment, defendants NAVIN KHANNA, TINU KHANNA, TOU SUE VANG, ANDREW VANG, and MONICA MOUA shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), all property, real or personal, involved in such violations, and any property traceable to such property, including but not limited to the following:

        a.      Real property located at 8201 Home Country Way, Sacramento, California, Sacramento County, APN: 115-0252-015-0000,
        b.      Real property located at 6148 20th Street, Rio Linda, California, Sacramento County, APN: 215-0111-001-0000,
        c.      Real Property located at 3 Bucks Mill Lane, Holmdel, New Jersey, Monmouth County, APN: 20-00030-0000-0021-03,
        d.      A Note secured by a Mortgage dated March 18, 2021, and filed in the County of Monmouth, New Jersey on April 1, 2021 (Book: OR-9497, Page: 1110) in the

INDICTMENT

21

amount of $1,700,000, secured by real property located at 3 Bucks Mill Lane, Holmdel, New Jersey, APN: 20-00030-0000-0021-03, and

e.    A sum of money equal to the amount of money involved in the offenses, for which defendants are convicted.

3.    Upon conviction of one or more of the offenses alleged in Counts Seven through Nineteen of this Indictment, defendant TOU SUE VANG shall forfeit to the United States pursuant to 31 U.S.C. § 5317(c)(1), all property, real and personal, involved in the offenses and any property traceable to such property, including but not limited to the following:

a.    A sum of money equal to the total amount of money involved in such offenses, for which the defendant is convicted.

4.    If any property subject to forfeiture as a result of the offenses alleged in Counts One through Forty of this Indictment, for which defendants are convicted:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 982(b)(1), 28 U.S.C. § 2461(c), and 31 U.S.C. § 5317(c)(1)(B), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendants, up to the value of the property subject to forfeiture.

A TRUE BILL.

**/s/ Signature on file w/AUSA**

FOREPERSON

_(signature)_
PHILLIP A. TALBERT
United States Attorney

*No.* __ 2:22-cr-0213 KJM

---

# UNITED STATES DISTRICT COURT

*Eastern District of California*

*Criminal Division*

## THE UNITED STATES OF AMERICA
*vs.*

NAVIN KHANNA aka Lovin Khanna,
TINUA KHANNA aka Gagan Khanna,
DANIEL DOLAN,
CHI MO aka David Mo,
WRIGHT LOUIS MOSLEY,
ISHU LAKRA,
TOU SUE VANG,
ANDREW VANG, and
MONICA MOUA.

---

## I N D I C T M E N T

**VIOLATION(S):** 18 U.S.C. § 371 – Conspiracy to Transport Stolen Property Interstate;
18 U.S.C. § 1956(h) – Conspiracy to Launder Money;
18 U.S.C. § 2314 – Interstate Transportation of Stolen Property (4 counts);
31 U.S.C. § 5324(a)(3) and (d)(2) – Structuring Currency Transactions (13 counts);
18 U.S.C. § 1957(a) – Monetary Transactions with Proceeds of Specified Unlawful Activity (17 counts);
18 U.S.C. § 1956(a)(l)(B)(i) – Concealment Money Laundering (4 counts);
18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), 18 U.S.C. § 982(a)(l), and 31 U.S.C. § 5317(c)(1) - Criminal Forfeiture.

*A true bill,*

## /s/ Signature on file w/AUSA
_____
*Foreman.*

*Filed in open court this* _____ **20th** *day*

*of* ___October_____ *, A.D. 20* **22** ____

/s/ N. Cannarozzi
_____
*Clerk.*

---

*Bail, $* _No bail bench warrants as to all defendants._

_____
JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

### United States v. Khanna et al.
**Penalties for Indictment**

**Defendants**
**NAVIN KHANNA aka Lovin Khanna, TINU KHANNA aka Gagan Khanna, DANIEL DOLAN, CHI MO aka David Mo, WRIGHT LOUIS MOSLEY, ISHU LAKRA, TOU SUE VANG, ANDREW VANG, and MONICA MOUA**

| | |
|---|---|
| **COUNT 1:** | **ALL DEFENDANTS** |

VIOLATION:     18 U.S.C. § 371 – Conspiracy to Violate 18 U.S.C. § 2314 (Interstate Transport of Stolen Property)

PENALTIES:     Maximum of 5 years imprisonment;
Fine of $250,000 or twice the gross gain or loss; or
Both fine and imprisonment
Supervised release of up to 3 years

SPECIAL ASSESSMENT: $100 (mandatory on each count)

| | |
|---|---|
| **COUNT 2:** | **N. KHANNA, T. KHANNA, T. VANG, and A. VANG** |

VIOLATION:     18 U.S.C. § 1956(h) – Conspiracy to Commit Money Laundering

PENALTIES:     Maximum of up to 20 years in prison; or
Fine of $500,000 or twice the gross gain or loss; or
Both fine and imprisonment
Supervised release of up to 3 years

SPECIAL ASSESSMENT: $100 (mandatory on each count)

| | |
|---|---|
| **COUNTS 3-6:** | **N. KHANNA, T. VANG, and DOLAN** |

VIOLATION:     18 U.S.C. § 2314 (Interstate Transport of Stolen Property)

PENALTIES:     Maximum of up to 10 years in prison; or
(each count):   Fine of $250,000 or twice the gross gain or loss; or
Both fine and imprisonment
Supervised release of up to 3 years

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**COUNTS 7-19:**    **T. VANG**

VIOLATION:    31 U.S.C. § 5324(a)(3) and (d)(2) – Structuring Currency Transactions

PENALTIES:    Maximum of up to 10 years in prison; or
(each count):    Fine of $250,000 or twice the gross gain or loss; or
    Both fine and imprisonment
    Supervised release of up to 3 years

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**COUNT 20:**    **T. VANG and MOUA**

VIOLATION:    18 U.S.C. § 1957(a) – Monetary Transactions with Proceeds of Specified Unlawful Activity

PENALTIES:    Maximum of up to 10 years in prison; or
    Fine of $250,000 or twice the gross gain or loss; or
    Both fine and imprisonment
    Supervised release of up to 3 years

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**COUNTS 21-36:**    **T. VANG**

VIOLATION:    18 U.S.C. § 1957(a) – Monetary Transactions with Proceeds of Specified Unlawful Activity

PENALTIES:    Maximum of up to 10 years in prison; or
(each count):    Fine of $250,000 or twice the gross gain or loss; or
    Both fine and imprisonment
    Supervised release of up to 3 years

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**COUNTS 37-40:**    **T. VANG**

VIOLATION:    18 U.S.C. § 1956(a)(1)(B)(i) – Concealment Money Laundering

PENALTIES:    Maximum of up to 20 years in prison; or
(each count):    Fine of $500,000 or twice the gross gain or loss; or
    Both fine and imprisonment
    Supervised release of up to 3 years

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**FORFEITURE ALLEGATION:**   **all Defendants**

VIOLATION:          18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), 18 U.S.C. § 982(a)(l), and
                    31 U.S.C. § 5317(c)(1) - Criminal Forfeiture

PENALTIES:          As stated in the charging document